# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ALAN KARL SLATER, <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 20-CV-4038-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Alan Karl Slater seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Slater argues the Commissioner erred in evaluating the medical-opinion evidence. I **affirm** the Commissioner's decision.

## I.    BACKGROUND[1]

Slater, who is in his 40s, most recently worked as a cement truck driver. AR 19, 43, 258. Slater was able to work this job full-time from April 2012 to August 25, 2015, despite suffering back pain as early as 2011, which he treated with injections and visits to the chiropractor. AR 214, 252, 258. He stopped working in August 2015 after he stepped into a hole at work and injured his right ankle and knee. *Id.* He filed for workmen's compensation and remained off work until April 1, 2016, when he worked for a half hour before being fired (he reported in March and September 2017 that he was

---

[1] The parties have provided a more thorough overview of the treatment records in the Joint Statement of Facts (Doc. 15). Statements without a citation in this section are taken from the Joint Statement of Facts.

fired due to a dispute over workmen's compensation, but he testified at the hearing in March 2019 that he was fired after his employer saw his physical limitations). AR 45, 252, 257, 423. He has not worked since.

Slater met with Douglas Martin, MD, in July 2016 for an independent medical examination in connection with his claim for workers' compensation. *See* AR 877-885. At that appointment, Slater reported (for the first time) other work injuries, including numbness and tingling in his hands for the last year, as well as a head injury from July 2015 when a steel beam hit his head and caused him to lose consciousness for two minutes. AR 386-87, 879. Shortly after the examination, in August 2016, Slater sought treatment for these work injuries from his primary care provider, Brett Olson, MD—Slater reported tingling and numbness in his hands from using a jackhammer at work, as well as a specific injury in June 2015; and he reported memory loss, speech problems, and headaches since his July 2015 head injury. AR 383-90. Dr. Olson ordered a nerve conduction study and diagnosed Slater with carpal tunnel syndrome based on the results. *Id.* Dr. Olson also ordered a brain MRI,[2] but it was normal and did not show any sign of head injury.

In connection with his claim for workers' compensation, Slater had another consultative examination in October 2016, this time performed by Marc Hines, MD. AR 576-597. Dr. Hines noted Slater continued to suffer from a leg and ankle injury and that walking in a boot negatively impacted his back. AR 594. Dr. Hines also diagnosed Slater with fibromyalgia, depression, and anxiety. *Id.* He found Slater developed migraines and daily headaches after his July 2015 head injury, but he noted Slater's headaches might improve with treatment. *Id.* At Slater's next appointment with Dr. Olson in January 2017, Slater started medications to treat his depression (Cymbalta) and headaches (Topamax).

---

[2] Magnetic Resonance Imaging.

Slater filed for Social Security disability benefits in February 2017. Because he continued to receive payment through his employment after his August 2015 injury, he alleged a disability onset date of April 2016, when his employment ended. He alleged disability based on migraines; carpal tunnel; brain injury; fibromyalgia; degenerative disc disease; peripheral neuropathy; depression; and knee, foot, and ankle problems.

The Social Security Administration denied Slater's DI application initially in April 2017 based on insufficient information (Slater had not submitted function reports). AR 71. On reconsideration, Slater submitted additional medical records and completed a migraine questionnaire, and the Social Security Administration ordered a physical and mental consultative examinations. Slater met with Jeannett Wu, MD, and psychologist Don Johnson, PhD, in September 2017 for consultative examinations. AR 417-25. After receiving these reports, the Social Security Administration again denied Slater's DI claim in November 2017, finding his mental impairments nonsevere and the information insufficient to evaluate Slater's physical functional limitations based on his continued failure to complete function reports. AR 79-85.

Slater requested review before an administrative law judge (ALJ). On March 27, 2019, the ALJ held a video hearing, at which Slater and a vocational expert testified. On May 1, 2019, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[3] to determine whether Slater was entitled to disability benefits. AR 11-21. The ALJ found Slater suffered from the following severe impairments: migraines, fibromyalgia, degenerative disc disease, peripheral neuropathy, degenerative

---

[3] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." **King v. Astrue**, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." **Goff v. Barnhart**, 421 F.3d 785, 790 (8th Cir. 2005) (quoting **Eichelberger v. Barnhart**, 390 F.3d 584, 591 (8th Cir. 2004)).

3

joint disease, and obesity. AR 13. To aid in the evaluation whether Slater could work, the ALJ determined he had the following residual functional capacity (RFC)[4]:

> [Slater] has the RFC to perform light work . . . as follows: He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit a total of 6 hours, as well as stand and walk, combined, a total of 6 hours in an 8-hour workday. He has no limitations in reaching. He can climb stairs occasionally and slowly with a handrail, but must avoid climbing ladders, scaffolds, and similar devices. He can balance frequently as well as crouch, kneel, stoop and crawl occasionally. He must avoid machinery. He has moderate limitations in concentration, persistence, and pace. The term moderate as used herein and defined at the hearing, means affected, not precluded, such that a person can perform at lower acceptable limits for most workplaces. As defined, he is moderately limited in carrying out details and complex instructions, in maintaining extended concentration for such tasks, and in adjusting to significant changes in a normal work routine or setting. He is thus limited to work involving only simple, routine and repetitive tasks of two to three steps on average.

AR 16. The ALJ found Slater could not perform his past work as a cement truck driver or assistant manager at a gas station, but based on his age, education, work experience, and RFC, the ALJ found that a significant number of other jobs existed in the national economy that Slater could perform, such as mail clerk, office helper, and routing clerk. AR 20-21. Accordingly, the ALJ concluded that Slater was not disabled from April 2016 through the date of the decision in May 2019. AR 20-21.

Slater appealed, submitting a new RFC assessment from Dr. Olson completed in March 2019. AR 29-30. The Appeals Council declined to exhibit this evidence, finding it would not change the outcome of the decision. AR 1-3. The Appeals Council denied Slater's request for review on April 27, 2020, making the ALJ's decision the final decision of the Commissioner.[5] Slater filed a timely complaint in this court seeking

---

[4] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 404.1545(a)(1)**).

[5] *See* **20 C.F.R. § 404.981**.

judicial review of the Commissioner's decision (Doc. 1).[6] The parties briefed the issues (Docs. 15, 17-19) and consented to the exercise of jurisdiction by a United States magistrate judge (Doc. 16).

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole."[7] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[8] The court "do[es] not reweigh the evidence or review the factual record de novo."[9] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[10]

Slater argues that the ALJ erred in evaluating Dr. Hines's and Dr. Johnson's medical opinions. He also argues that the Appeals Council erred in determining Dr. Olson's RFC opinion would not change the outcome of the decision.

### A. Dr. Hines's Opinion

When determining a claimant's RFC, the ALJ considers medical and other RFC opinions "together with the rest of the relevant evidence."[11] The ALJ considers the

---

[6] *See* **20 C.F.R. § 422.210(c)**.

[7] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**.

[8] *Kirby*, 500 F.3d at 707.

[9] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[10] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

[11] **20 C.F.R. § 404.1527(b)**.

following factors to determine the weight to assign any opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."[12]

Dr. Hines reviewed treatment records and met with Slater for a consultative examination in October 2016 in connection with Slater's workers' compensation claim. AR 476-97. He concluded that Slater could not work on his feet and would need to use a cane and braces, that he could not balance on his right leg, that he could not "use stairs on a regular basis," that he would not be able to engage in repetitive motions with his upper extremities, and that he should not perform work above shoulder height. AR 596. Dr. Hines recognized, however, that Slater had not been treated for many of his symptoms and thus found Slater had not yet reached maximum medical improvement. *Id*.

The ALJ discussed the results of Dr. Hines's physical examination but not his opined limitations, and the ALJ did not state the weight he assigned to Dr. Hines's opinion. AR 17-18. The Commissioner argues that the ALJ is not required to discuss opinions issued in connection with other disability proceedings like workers' compensation. Workers' compensation proceedings have "different standards for determining disability" than Social Security proceedings.[13] But for claims filed before March 27, 2017 (like Slater's), guidance from the Social Security Administration required the ALJ to "explain the consideration given to" disability determinations by

---

[12] *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 404.1527(c)**).

[13] *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

6

other governmental agencies, even though such decisions were not binding on the ALJ and used different standards (and were therefore perhaps of limited relevance).[14]

The Commissioner cites cases in which courts upheld an ALJ's decision to discount, as a rule, workers' compensation disability ratings, since they are based on different standards. But even these decisions recognize that the underlying doctor's findings supporting the disability rating may be relevant and not necessarily impacted by the different standards governing workers' compensation claims and Social Security claims.[15] ALJs are required to "consider and address medical source opinions," and when the ALJ's RFC assessment "conflicts with an opinion from a medical source, [the ALJ] must explain why the opinion was not adopted."[16] That a medical opinion was issued in connection with another disability proceeding does not change this general rule.

Nevertheless, the ALJ's failure to explicitly assign weight to Dr. Hines's opinion does not necessarily require reversal.[17] "[A] deficiency in opinion-writing is not a

---

[14] **Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45593**, 45596-97 (Aug. 9, 2006). The Social Security has updated the regulations for claims filed after March 27, 2017, providing that the Social Security Administration will not provide analysis about other disability determinations, but it will consider "all of the supporting evidence underlying the other governmental [agency's] . . . decision." *See* **20 C.F.R. § 404.1504**.

[15] *See Coria v. Heckler*, 750 F.2d 245, 247-48 (3d Cir. 1984); *Holdeman v. Kijakazi*, No. 20-CV-729-NKL, 2021 WL 6062368, at *6 (W.D. Mo. Dec. 22, 2021); *see also Pelkey v. Barnhart*, 433 F.3d 575, 579-80 (8th Cir. 2006) (discussing Veteran's Affairs disability ratings); *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (noting ALJ may rely on opinion based on consultative examination "performed in connection with a workers' compensation claim").

[16] **SSR 96-8p, 61 Fed. Reg. 34474**, 34478 (July 2, 1996).

[17] *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (holding that reversal was not required when ALJ cited to but did not explicitly discount treating-source opinion that claimant suffered marked mental limitations when it was "highly unlikely that the ALJ did not consider and reject" the opinion); *Bolin v. Saul*, No. 4:18-CV-1052 NAB, 2020 WL 2799212, at *5-6 (E.D. Mo. May 29, 2020) (holding that although "[i]t would have been preferable for the ALJ to state what weight was given to [the consultative examiner's] opinion," reversal was not required when "it [wa]s clear that the ALJ did not give [the] opinion any weight"); *Kermoade v. Astrue*, No. 8:10CV396, 2011 WL 2693216, at *11–12 (D. Neb. July 11, 2011) (holding that although "the ALJ's opinion could have included a specific explanation of the weight given to [the consultative

sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."[18] Here, the ALJ explained why he was not fully crediting Slater's testimony that he could not walk for six hours in a day and that he suffers manipulative limitations. AR 17-19; Doc. 15. These same reasons support the ALJ's failure to adopt Dr. Hines's opined limitations. The record supports that Slater no longer uses an assistive device to walk, that grip strength tests have been normal, and that Slater was able to "participat[e] in manual labor, including part-time construction, painting, and moving blocks and boards"—inconsistent with the limitations in Dr. Hines's opinion. AR 19. Indeed, Dr. Hines recognized that Slater had not reached maximum medical improvement, suggesting that his opined limitations might not last for twelve months, as required for Social Security disability (unlike workers' compensation, where "even temporary and partial disability are compensated").[19]

The ALJ's opinion makes clear that the ALJ considered Dr. Hines's consultative examination, and it can be inferred from the ALJ's RFC discussion that he rejected Dr. Hines's opined limitations. Although it would have been preferable for the ALJ to explicitly assign weight to Dr. Hines's opinion, reversal is not required when the ALJ's

---

examiner's] opinion," reversal was not required when the ALJ "thoroughly discussed" another provider's opinion containing the same limitations and found it inconsistent with the record as a whole); *cf. McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (remanding when the ALJ ordered a psychological consultative examination after the hearing but then failed to assign weight to the opinion, and it was unclear whether and why the ALJ discounted the consultative examiner's findings, or whether the ALJ believed his RFC determination was consistent with the consultative examiner's opinion); *Rollins v. Berryhill*, No. 4:15-cv-04097-BAB, 2017 WL 690558, at *4-7 (W.D. Ark. Feb. 21, 2017) (ultimately remanding because ALJ's RFC analysis as a whole was flawed); *Murphy v. Colvin*, 7 F. Supp. 3d 917, 926–27 (N.D. Iowa 2014) (same); *Turner v. Astrue*, No. 11-00448-CV-W-NKL-SSA, 2012 WL 123063, at *6-9 (W.D. Mo. Jan. 17, 2012) (ultimately finding evidence of record overwhelmingly supported disability determination and remanding for award of benefits).

[18] *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)).

[19] *Coria*, 750 F.2d at 247-48.

overall RFC discussion makes clear the evidence the ALJ found inconsistent with Dr. Hines's opined limitations. The treatment records do not support that the severe limitations found by Dr. Hines should have been included in Slater's RFC. I decline to reverse based on the ALJ's failure to explicitly state that he was discounting Dr. Hines's consultative-examination opinion.

### B. Dr. Johnson's Opinion

Slater challenges the weight the ALJ assigned to Dr. Johnson's opinion. Dr. Johnson examined Slater once in September 2017 on behalf of the Social Security Administration. AR 422-24. He concluded that Slater experiences significant pain from migraines and fibromyalgia most days of the month, during which times Slater cannot focus on anything besides the pain. AR 425. Dr. Johnson suggested Slater's pain would prevent him from being able to remember, understand, and carry out instructions, use good judgment, and respond appropriately to changes in the workplace. *Id.* Dr. Johnson also noted that although Slater is personable and friendly on his "relatively few" good days, he is irritable, angry, crabby, and impossible to get along with on his days filled with pain. *Id.*

The ALJ assigned Dr. Johnson's opinion little weight. AR 14. The ALJ found that Dr. Johnson's opined severe limitations were inconsistent with his objective observations during the examination. *Id.* The ALJ also noted Dr. Johnson appeared to rely "purely upon the claimant's subjective complaints." *Id.*

Substantial evidence supports the ALJ's determination that Dr. Johnson relied on Slater's reports of his limitations. On objective examination, Dr. Johnson noted Slater was congenial, friendly, polite, cooperative, and made good eye contact. AR 424. Slater told Dr. Johnson he was not in pain on the day of the examination. *Id.* The ALJ could thus find that in opining Slater could not work with others, Dr. Johnson relied on Slater's statements that "when he experiences pain, he tends to be crabby and angry[,] . . . is very irritated and has no patience[,] and tends to be very short in his dealings with

9

others." *Id.* Similarly, Dr. Johnson estimated Slater to be of average intelligence based on objective testing showing Slater could follow a three-stage command, interpret most simple abstractions with some difficulty, recall two of three named objects after a five-minute interval, complete serial sevens (through one cycle only), compute math problems slowly, and spell "world" backwards slowly. *Id.* Thus, in finding that Slater could not follow even simple instructions when he was in pain, substantial evidence supports that Dr. Johnson relied solely on Slater's reports of his limitations and of his pain days.

An ALJ may discount a medical opinion that relies on a claimant's discredited subjective complaints.[20] Slater argues that this rule does not apply to mental-health opinions, as mental-health professionals necessarily rely on a claimant's subjective complaints in treating and evaluating psychological disorders. The Eighth Circuit has upheld an ALJ's decision to discount a mental RFC opinion because it relied too heavily on a claimant's discredited subjective complaints.[21] Here, substantial evidence supports that Dr. Johnson's opined limitations are not supported by his objective testing and are based solely on Slater's reports of his *limitations*—Dr. Johnson did not extrapolate limitations based on Slater's reports of his *symptoms*. In addition, Dr. Johnson appeared to base his limitations on Slater's reports of pain, a physical symptom. Slater does not

---

[20] *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017); *Reece v. Colvin*, 834 F.3d 904, 906, 909-10 (8th Cir. 2016); *Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014); *Finch v. Astrue*, 547 F.3d 933, 936-37 (8th Cir. 2008); *cf. Papesh v. Colvin*, 786 F.3d 1126, 1132-33 (8th Cir. 2015) (ALJ may not discount treating-source opinion based on subjective complaints if ALJ's credibility determination is not supported by substantial evidence).

[21] *See Julin*, 826 F.3d at 1088-89. The Ninth Circuit reached the same conclusion in one of the opinions cited by Slater. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The other cases cited by Slater are distinguishable, as in those cases, the courts ultimately found substantial evidence did not support the ALJ's decision to discount the claimant's subjective complaints, *Gallant v. Saul*, 783 F. App'x 688, 690-91 (9th Cir. 2019), or the ALJ did not reject the claimant's subjective complaints, *Thompson v. Berryhill*, No. 4:18-CV-133-FL, 2019 WL 2980030, at *12-13 (E.D.N.C. Apr. 22, 2019), *report and recommendation adopted,* 2019 WL 2932736 (July 8, 2019).

challenge the weight the ALJ assigned his subjective complaints, and the treatment records support the ALJ's determination that Slater is not as limited as he testified.[22] The ALJ gave good reasons for discounting Dr. Johnson's opinion.

### C. Dr. Olson's Opinion

Slater argues that the Appeals Council erred in finding that Dr. Olson's opinion would not change the outcome of the decision. As the Commissioner notes, when "it is clear that the Appeals Council . . . considered newly submitted evidence," the court does "not evaluate the Appeals Council's decision to deny review."[23] Instead, the court determines "whether the [ALJ's] determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made."[24]

Dr. Olson, Slater's primary care provider, completed an RFC form in March 2019. AR 29-30. He opined that Slater suffered from multiple concussion syndrome, which would frequently be severe enough to interfere with his attention and concentration for simple work-related tasks. AR 29. He also opined that Slater could walk six blocks before needing to rest and that he could only lift ten pounds occasionally. *Id*. He found that Slater would need a fifteen- to thirty-minute break every one to two hours. *Id*. He opined that Slater suffered manipulative and reaching limitations such that in an eight-hour work day, he could use his hands 15% of the time, his fingers 15% of the time, and his arms 10% of the time. AR 30. He estimated that Slater would miss work more than four times a month. *Id*.

The ALJ discussed and rejected many of these limitations. For example, although Dr. Olson opined that Slater could only use his fingers and hands 15% of the time, the

---

[22] *See* AR 16-19; Doc. 15.

[23] ***Riley v. Shalala***, 18 F.3d 619, 622-23 (8th Cir. 1994).

[24] ***Id.***

11

ALJ noted tests showing Slater's grip strength was normal. AR 420, 933. After Dr. Olson diagnosed Slater with carpal tunnel syndrome in August 2016, Slater did not complain of issues with his hands and fingers to Dr. Olson again, and Slater noted his symptoms were stable with the use of nighttime splints in September 2016. AR 383; Doc. 15. With regard to Slater's ability to lift, stand, and walk, the ALJ noted Slater's activities of daily living included home-improvement projects and construction work. Overall, substantial evidence supports that Slater is not as limited as found by Dr. Olson. Dr. Olson's limitations are similar to the limitations Slater testified he suffered, which the ALJ rejected as inconsistent with the record. Substantial evidence supports this determination.

Even considering Dr. Olson's opinion, substantial evidence supports the ALJ's RFC determination.

### III. CONCLUSION

I **affirm** the decision of the Social Security Administration. The Clerk of Court is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** March 24, 2022.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa